## GRAND CAMP COLORED WOODMEN *v.* WARE.

### Opinion delivered February 17, 1913.

BENEFIT INSURANCE—LIABILITY.—When a fraternal order issued a benefit certificate of insurance to deceased, who was a member of its local camp, which provided for the payment of a certain sum to a person named in the certificate, provided the member comply with the laws of the order, it is liable on the certificate upon the member's death, if his dues had been paid and he was otherwise in good standing with the order, although the local camp, of which he was a member, had been suspended from the association for failure of its financial secretary to remit dues collected, but the general officers of the order are not personally liable on the certificate.

Appeal from Woodruff Circuit Court, Northern District; *Hance N. Hutton,* Judge; modified and affirmed.

*Scipio A. Jones,* for appellant.

1.   The judgment against Drew and the other officers of the appellant lodge is manifest error, not responsive to the allegations of the complaint nor to the verdict of the jury.

2.   The evidence is not sufficient to support the verdict against the lodge.   The so-called "financial card" was inadmissible in evidence without proof of its genuineness.

No brief filed for appellee.

SMITH, J.  This suit was commenced by appellee, who alleged in her complaint that her husband, Ed Ware, became a member of the Grand Camp Colored Woodmen, Forest of Arkansas, his membership being in Lafayette Camp, No. 179, a subordinate lodge thereof at Tupelo, Arkansas; and that her said husband had paid the fees demanded by said camp; and that there had been issued to him Benefit Certificate No. 779, for the sum of $1,000, to be paid any person who might be designated in the said certificate; and that she was the person so designated; and all camp dues had been paid by the said Ed Ware up to the time of his death.  That the said Ed Ware departed this life on October 30, 1910; and that although proof of his death had been forwarded and received by the Grand Camp, no payment had been made.

The answer admitted Ware had been a member of its organization, but denied that he had paid his dues or had designated any beneficiary.  It admitted the receipt of the proof of death, and that the said Ware died on October 30, 1910.  It alleged that the certificate which was issued to members provided among other things that the Grand Camp will pay to the beneficiary named in its certificates, a sum not less than $325, and not to exceed $1,000, which may be raised by an assessment of twenty-five cents on each and every member of the order in good standing within the Grand Jurisdiction, under the laws of the order; provided he shall be in good standing at the time of his death, and it was further stipulated that as a part of said contract of insurance, the member by acceptance of the certificate, agreed to abide by the laws and constitution of the order then in existence, as well as any that might be passed thereafter.  That said certificate provided that all assessments must be paid in advance and must reach the office of the Grand Banker on or before the first of the month for which the member is paying, and that upon failure so to pay, the certificate immediately and without notice became null and void.  It was further alleged that the said Ware was in default of payment for the month of September and was not,

therefore, in good standing at the time of his death, and it was also alleged that the local camp, of which deceased was a member, had itself been suspended because of the failure of the financial secretary of this local camp to make a report for the months of November and December, 1910, and January and February, 1911, and that under the provisions of sections 2 and 3 of the by-laws, all members and officers of said camp stood suspended and no officer thereof had authority to receive or receipt for the payment of dues on or after the 25th day of October, 1910. The said sections, 2 and 3, are as follows:

"If any member shall fail to pay the proper officer the assessment levied upon him or her, on or before the twenty-fifth day of the month succeeding its issue, he shall forfeit all claim for any death benefit, and shall stand suspended. The financial secretary shall send two lists of names of members who paid their endowment, one with the money to the Grand Banker, and one duplicate to the Grand Secretary."

"Section 3. The financial secretary shall, within five (5) days after the twenty-fifth of the month, after that in which the assessment is collected, forward all sums collected by him or her for assessment or taxes, to the Grand Banker, and if any financial secretary shall fail to make such remittance, he or she, upon the report of the Grand Banker, shall be suspended for thirty (30) days for the first offense, and removed from office for the second."

At the trial, appellee produced the financial card of her husband on which all dues were marked paid that were payable prior to his death and she produced his certificate of membership, showing that she had been designated as the beneficiary therein; indeed, the point in regard to the designation of beneficiary is not here contested.

The banker of the local lodge testified that he saw Ware pay to the financial secretary his dues for the months of September and October, 1910, and saw the secretary credit the payments on the financial card, intro-

duced in evidence and another member of the lodge corroborated this statement.

There was a verdict for plaintiff for three hundred and twenty-five dollars, the minimum sum to be paid upon the death of any member in good standing, and judgment was rendered against the appellant and its chief officers for that amount. A motion for a new trial was overruled and this appeal taken.

The judgment against the officers of this order was erroneous, and was no doubt a mere misprision of the clerk. At any rate, the judgment as to them is reversed and the cause dismissed. The record shows that the financial secretary was the proper lodge officer to receive the dues and sign the financial card.

The proof shows that the camp was suspended on October 30, 1910, but there is nothing in the proof as abstracted which shows that the validity of the policy was affected in any way by the failure of the lodge secretary to make remittances of dues collected.

Section 2 of the by-laws provides that the member, who fails to pay his dues on or before the 25th day of the month shall forfeit all claims for any death benefit and shall stand suspended. But the jury found from evidence which was sufficient to support that finding, that Ware had paid all assessments which were due at the time of his death, and the section 3 of the by-laws quoted provides that upon the failure of the lodge secretary to make remittance that officer, and not the lodge, shall be suspended. The only witness, who testified as to the date of Ware's death, stated that he had died on October 29, which was one day before the local lodge was suspended. But we need not consider that question. The record here presents the same question decided in the case of *United Brothers of Friendship* v. *Haymon,* 67 Ark. 506, where to quote the syllabus, it was said:

"Benefit Insurance—Liability.—Where a mutual aid association issued a certificate of insurance to a member of one of its local lodges, which provided for the payment of a sum of money to the beneficiary named therein on

the death of the member, on the condition that such member should comply with all the laws of the association, it is liable on the certificate at the member's death, if the member kept her dues paid and otherwise complied with the laws of the association, although the local lodge of which she was a member had been suspended from the association for nonpayment of its dues.

Modified and affirmed.